# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| v. | } | Case No.:  2:07-CR-395-RDP-RRA |
| | } | |
| JAMES LERAY MCINTOSH, | } | |
| | } | |
| Defendant. | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant's Consolidated Motion to Reconsider and to Terminate Any Further Proceedings on Various Grounds (Doc. #35),[1] filed March 12, 2010.  For the reasons set forth, Defendant's Motion is due to be denied.

## I.    PROCEDURAL HISTORY

On September 25, 2007, a grand jury indicted Defendant on two counts: (1) possessing five or more kilograms of crack cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)-(C); and (2) carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I).  (Doc. #1).  On both counts, the indictment alleged that Defendant committed the crimes "on or about the 21st day of February, 2007."  (Doc. #1 at 1).

Defendant initially pleaded not guilty to the above counts.  (Doc. #23 at 3:12-15).  On November 28, 2007, the court held a change of plea hearing, at which time Defendant pleaded guilty to the counts contained in the indictment.  At the hearing, Defendant acknowledged that he had received a copy of the indictment, and Defendant's attorney indicated that he had ample opportunity to review the indictment and investigate possible infirmities as well as defenses.  (Doc. #23 at 6:5-

---

[1]Unless otherwise specified, record citations reference docket entries in the above-styled case.

13).  At the close of the hearing, Defendant admitted that he had committed the crimes alleged in the indictment.  (Doc. #23 at 23:19-24:4).  Accordingly, the court, finding that Defendant was "fully competent and capable of entering an informed plea" and the "plea of guilty [was] a knowing and voluntary plea supported by an independent basis of fact," accepted the plea and adjudged Defendant guilty of the offenses. (Doc. #23 at 24:5-13).  The court set the sentencing hearing for ninety days from the date of the plea hearing.  (Doc. #23 at 24:18-23).

After the court set the sentencing hearing, the Government discovered an error in the indictment.  Specifically, the indictment alleged that Defendant committed the crimes on or about February 21, 2007.  In reality, however, Defendant committed the crimes on November 12, 2005.  After bringing the matter to the court's attention, and out of an abundance of caution, the Government filed a motion to dismiss (without prejudice) the indictment.  (Doc. #16).  The court granted the Government's motion.  (1/30/08 Order).  The same day, a grand jury returned against Defendant a new indictment, which included the same counts but specified the correct date of offense.  (Case No. 2:08-CR-40, Doc. #1).

On March 3, 2008, Defendant filed a motion to dismiss the second indictment, arguing that it exposed him to double jeopardy.  (Case No. 2:08-CR-40, Doc. #6).  The court held a hearing and ultimately denied Defendant's motion.  (Case No. 2:08-CR-40, Doc. #18).  The case proceeded, and Defendant entered a conditional plea of guilty, which reserved his right to appeal the court's denial of his motion to dismiss.  (Case No. 2:08-CR-40, Doc. #35 at 2:8-13).  Based on the second guilty plea, the court sentenced Defendant.  (Doc. #25).

After sentencing, Defendant appealed the court's denial of his motion to dismiss the second indictment, and the Eleventh Circuit vacated his second conviction and remanded the case with

2

instructions to dismiss the second indictment. *United States v. McIntosh*, 580 F.3d 1222, 1229 (11th Cir. 2009). On October 8, 2009, the court held a conference with the parties to discuss how to proceed in light of the Eleventh Circuit's decision. The parties requested a briefing schedule, which the court provided. On the same day, the court vacated Defendant's second conviction and dismissed the second indictment. (Case No. 2:08-CR-40, Doc. #41). On October 15, 2009, the Government filed a motion to set the sentencing hearing. (Doc. #28). Defendant responded on October 30, 2009 (Doc. #30), and the Government replied on November 6, 2009 (Doc. #31). On December 11, 2009, the court granted the Government's request over Defendant's objection and set this case for sentencing on April 14, 2010. (Doc. #33). On the same day, the court entered a Memorandum Opinion (Doc. #32) detailing the basis for its decision. On March 12, 2010, Defendant filed the instant motion (Doc. #35), which contends that the court erred in granting the Government's request to set sentencing.

## II.     DISCUSSION

Defendant's Motion presents essentially three issues: (1) whether the dismissal of the first indictment against Defendant simultaneously vacated his conviction; (2) whether the Fifth Amendment requires that a charging instrument be existent at the time of sentencing; and (3) whether the court has jurisdiction, despite the dismissal of the indictment post-conviction, to sentence Defendant. The court addresses each issue in turn.

### A.     Whether the Dismissal of the First Indictment Against Defendant Simultaneously Vacated His Conviction

Defendant's first argument is that when this court granted the Government's motion to dismiss the first indictment to which he pleaded guilty, that dismissal effectively set aside his plea and, therefore, vacated his conviction. (Doc. #35 at 18-21). Defendant's argument misses the mark.

First, the facts and procedural history of this case, evaluated in light of the Eleventh Circuit's decision on appeal, establish that Defendant's conviction, produced by his initial guilty plea, was unaffected by the first indictment's dismissal. On January 30, 2008 and in response to a perceived defect, the Government filed its Motion to Dismiss the Indictment. (Doc. #16). According to the Government:

> The allegations contained within the Indictment charged the defendant with having committed a drug trafficking offense and a related gun crime on or about February 21, 2007. In fact, the evidence in the case, including the discovery provided, was that the defendant had committed the offense on November 12, 2005. Despite this error, the defendant pled guilty to the charges on November 28, 2007. Subsequent to his plea, the undersigned learned of the error and advised Counsel for the Defendant and the Court. At the time, the defendant was not in custody, but his bond has since been revoked as of January 25, 2008 due to violations of the terms of his release. As of today, January 30, 2008, a complete separate Indictment was returned against the defendant properly charging him with having committed the offenses in question on November 12, 2005.

(Doc. #16 at 1-2). Thus, the Government requested that the court dismiss "the indictment," or "the charges," against Defendant without prejudice. (Doc. #16 at 2). On the same day, the court granted the Government's request. (1/30/08 Order). The grand jury returned a second indictment, which covered the same offenses to which Defendant had already pleaded guilty. (Case No. 2:08-CR-40, Doc. #1).

4

When the grand jury returned the second indictment and Defendant presented his double jeopardy argument, this court concluded that "[e]ven if jeopardy attached, there is no possibility that Defendant McIntosh would be subjected to a second conviction because *there was no first conviction given that the first indictment was dismissed*.  Likewise, there is no possibility of a second punishment because no punishment has yet been imposed on Defendant."  (Case No. 2:08-CR-40, Doc. #21 at 10) (emphasis added).  Reaching this conclusion, the court endorsed the Government's view that "even if jeopardy did attach, Defendant's plea was effectively withdrawn and therefore Defendant continues to face the same jeopardy as in the first action."  (Case No. 2:08-CR-40, Doc. #21 at 7).  It was assumed, therefore, that jeopardy could detach and, indeed, did detach at the dismissal of the indictment, which, to this court, carried the plea and conviction with it.

On appeal, the Eleventh Circuit disagreed with this court's analysis regarding the legal significance of the dismissal:

> The district court erroneously concluded that the dismissal of the original indictment "effectively withdr[ew]" McIntosh's guilty plea. *When the district court granted the motion of the government to dismiss the first indictment, McIntosh had already pleaded guilty and been convicted of the offenses charged in the indictment, but the district court did not vacate the convictions or set aside the guilty plea.*  Although form is not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, neither is it appropriate entirely to ignore the form of order entered by the trial court.  *McIntosh has not yet been sentenced based on his plea of guilt in the first case, but his conviction still exists and awaits a sentence.*

*McIntosh*, 580 F.3d at 1228 (citation and internal quotation marks omitted) (emphasis added).  Therefore, according to the Eleventh Circuit, the second indictment exposed Defendant to double jeopardy precisely because the first plea, and its attendant conviction, remained even though the

court dismissed the first indictment.  As the Eleventh Circuit clarified, merely dismissing an indictment and its "charges," without more, is insufficient to set aside a plea once taken or to vacate the conviction consequently produced.  The Eleventh Circuit's determination did at least two things: it (1) exposed the error in this court's reasoning; and (2) explicated the basis for the rule that, "[i]n the case of a plea bargain, with respect to the offense pleaded to, jeopardy normally attaches when the court unconditionally accepts a guilty plea." *United States v. Baggett*, 901 F.2d 1546, 1548 (11th Cir. 1990).  In short, the dismissal of the first indictment and its "charges" had no legal effect on the conviction produced by Defendant's guilty plea.[2]

To this point, Defendant argues that "[w]hile it cannot be disputed that the Eleventh Circuit panel left such an impression, it is of note that the panel did not explain any legal basis for concluding that jeopardy could attach at the acceptance of the plea and then expire when the plea is set aside, or conviction vacated pursuant to a Government's motion to dismiss as opposed to a Defendant-initiated dismissal."  (Doc. #35 at 18-19).   Indeed, according to Defendant, "[t]he fact that the court did not set aside the guilty plea or vacate the conviction [in this case] was irrelevant at oral argument and is irrelevant now. . . . To find otherwise is to break new constitutional ground that neither this court nor the Eleventh Circuit panel [has] even acknowledged much less provided justification for."  (Doc. #35 at 20-21).

Defendant accurately states that the Eleventh Circuit would have "[broken] new constitutional ground" if it had decided that, on motion of the Government, jeopardy could detach after the court accepts the guilty plea.  Defendant's characterization of the Eleventh Circuit's

_____

[2]Further reiterating the distinction between dismissing an indictment and vacating a conviction, on appeal, the Eleventh Circuit vacated Defendant's conviction produced in the second case and remanded with instructions to dismiss the second indictment.  *McIntosh*, 580 F.3d at 1229.

conclusion, however, is unduly broad.  Specifically, Defendant (1) overextends the scope of the Eleventh Circuit's analysis, (2) having built that straw man, criticizes the decision's implications, and  (3) having defeated a fallacious argument, urges this court to disregard the Eleventh Circuit's reasoning.

As described above, this court concluded that jeopardy detached on motion of the Government to dismiss the indictment post-conviction.  But as the Eleventh Circuit noted, Defendant's conviction survived the dismissal, and accordingly, Defendant was placed in double jeopardy once the grand jury returned the second indictment.  *McIntosh*, 580 F.3d at 1229 ("McIntosh's initial conviction was never vacated, and the Double Jeopardy Clause prohibited a second prosecution of McIntosh for the same offenses.").  The Eleventh Circuit did not decide the broader issue suggested by Defendant (*i.e.*, whether a motion to set aside the plea or vacate the conviction, filed by the Government, would eliminate jeopardy, such that a second indictment would not violate the Fifth Amendment).  Instead, the Eleventh Circuit narrowly (and expressly) held that Defendant was again placed in jeopardy when the grand jury returned the second indictment because his conviction remained despite the dismissal of the first indictment.  Placed in context, therefore, the Eleventh Circuit concluded that the first dismissal had no effect on the conviction – and to be sure that is a premise both central and essential to its double jeopardy holding.

Finally, on appeal, the Eleventh Circuit observed that Defendant "has not yet been sentenced based on his plea of guilt in the first case, but his conviction still exists and awaits a sentence." *McIntosh*, 580 F.3d at 1228.  Defendant attacks that holding:

> Indeed, unless the Eleventh Circuit panel is prescient or omniscient, it had no way of knowing whether, or upon what grounds, the Defendant would object to proceeding in the above-styled case.

It is for these reasons that counsel for the Defendant respectfully requested at oral argument that the panel exercise caution and restraint rather than issuing an opinion that commented on matters that were not currently pending before it.  It is also for these reasons that the suggestion of the Eleventh Circuit should be analyzed closely and cautiously unless and until those suggestions are found firmly grounded in the law of the land.  *After a review of the relevant law, it is clear that the suggestion of the Eleventh Circuit that the above-styled case can proceed lawfully to sentencing is not grounded in law and that the decisional law that is in place contradicts the panel.*

(Doc. #35 at 10) (emphasis added).  In effect, Defendant requests that this court reexamine the Eleventh Circuit's decision.  That task, however, is plainly not the responsibility (or within the authority) of this court, as *stare decisis* demands that a "circuit court's decision binds the district courts sitting within its jurisdiction . . . ."  *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (citation omitted).  Further elaboration on that point is unnecessary.  In any event, Defendant cites to no clear "decisional law that is in place [that] contradicts the panel."  (Doc. #35 at 10).

In sum, the court concludes, consistent with the Eleventh Circuit's mandate, that the dismissal of the first indictment had no effect on the conviction resulting from Defendant's guilty plea.[3]  To reach the contrary conclusion would require this court to ignore a key feature of the

---

[3]This conclusion subsumes Defendant's newly asserted double jeopardy argument: "Any further action against the Defendant by the Government or the court, including proceeding to sentencing and including the restrictions and conditions of his bond, are in violation of the Defendant's double jeopardy rights to be free from successive and repeated prosecutions."  (Doc. #35 at 33).

Defendant's contention, however, erroneously assumes that proceeding to sentencing, after the dismissal of the indictment, places him in jeopardy distinct from his underlying conviction.  Consistent with the Eleventh Circuit's decision, the conviction survived the indictment's dismissal, and sentencing exposes him to the same jeopardy as the conviction which triggers the sentencing.  *See McIntosh*, 580 F.3d at 1229 ("McIntosh's initial conviction was never vacated, and the Double Jeopardy Clause prohibited a second prosecution of McIntosh for the same offenses.").

At bottom, sentencing Defendant does not amount to re-prosecution, otherwise forbidden by the Double Jeopardy Clause.  Rather, sentencing Defendant is merely the continuation of the *same* prosecution in which he pleaded guilty and, that based on his guilty plea, produced a conviction.  According to the Eleventh Circuit, the indictment's dismissal did not terminate or reset the proceedings such that Defendant's right against double jeopardy operates as a shield against sentencing in *this* case.

Eleventh Circuit's decision.  Whether the Eleventh Circuit cited caselaw is not the critical issue because there is a controlling case squarely on point that directly undercuts Defendant's arguments here: *United States v. McIntosh*, 580 F.3d 1222 (11th Cir. 2009).

**B.      Whether the Fifth Amendment Requires that a Charging Instrument be in Place at the Time of Sentencing**

For the first time, Defendant contends that proceeding to sentencing without an indictment is unconstitutional.  (Doc. #35 at 4-7).  He claims that, first, the Fifth Amendment requires an indictment at "any point in time for which the Defendant is 'held to answer' for an offense" and second, Federal Rule of Criminal Procedure 7 purportedly requires an indictment regardless of the stage of the proceeding.  Defendant, assuming the importance of an indictment at the prosecution's initiation, concludes that an indictment is similarly critical for sentencing after the plea of guilty.  His assumption is mistaken.

According to the Fifth Amendment, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. CONST. amend. V.  Conceptually related, the Sixth Amendment requires that "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. CONST. amend. VI. Although certainly the Fifth and Sixth Amendments require that a prosecution must commence with a charging instrument, the provisions are silent regarding their applicability to the phase after the guilty plea.  Examining the purposes served by an indictment reveals that, at sentencing and post-conviction, the indictment's role substantially diminishes and is perhaps inconsequential.

Historically, the indictment curbed the arbitrary initiation of criminal proceedings against individuals:

> Traditionally in our law, an accusation of felony must made by a presentment or an indictment by a grand jury.  Although the grand jury originated as a royal device to extract information from the people of a locality concerning matters of interest to the crown, it had become by the time of the revolts against the Stuart kings an instrument for the protection of the subject against arbitrary accusations by the crown, and it was this function of the grand jury that the framers of the constitutions of most of the original states had in mind when they inserted in those documents provisions for the commencement of felony prosecutions only by indictment of the grand jury, and which led to the insistence on the adoption of the provision of the fifth amendment to the federal constitution . . . .

H.L. McClintock, *Indictment by a Grand Jury*, 26 MINN. L. REV. 153, 156 (1942); *see also id.* at 159 ("At common law, a first pleading . . . must allege enough facts to show that the court in which the proceeding is brought has jurisdiction of the subject matter . . . .  In the second place, the pleading must inform the defendant of the nature of the charge against him.  In the third place, it must form a record from which it can be determined whether a subsequent proceeding is barred by the former adjudication.").

The right to indictment, therefore, is a shorthand reference to an individual's right to a grand jury's screening of potential prosecutions.  Specifically, "[t]he very purpose of the requirement that a [person] be indicted by grand jury is to limit his jeopardy to offenses charged by a group of . . . fellow citizens acting independently of either prosecuting attorney or judge." *United States v. Peel*, 837 F.2d 975, 978-79 (11th Cir. 1988) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)). In this case, Defendant undisputedly faced charges first assessed by a grand jury.  The indictment, which reflected the community's consideration, served its historical function by cabining prosecutorial decision-making.

Moreover, as the caselaw developed and the courts began interpreting the Fifth and Sixth Amendments in tandem, an indictment's critical secondary function arose: notice. *See, e.g.*, *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) ("By now, it is axiomatic that an indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution of the same offense.") (citations and internal quotation marks omitted).

The Supreme Court has "emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured.  These criteria are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States*, 369 U.S. 749, 763-64 (1962) (citations and internal quotation marks omitted). Here, the first indictment fully satisfied all of these purposes.  The court addresses each in turn.

First, a Fifth Amendment charging document is principally aimed at "sufficiently appris[ing] the defendant of what he must be prepared to meet." *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003); *see also United States v. Archibald*, 212 Fed. App'x 788, 793 (11th Cir. 2006) ("But an indictment simply must allege 'enough factual detail to apprise [the defendant] of the conduct for which he would be . . . tried.'") (quoting *United States v. Gray*, 260 F.3d 1267, 1283 (11th Cir. 2001)).  Once the court accepts the defendant's guilty plea, however, "[a] plea of guilty knowingly and understandingly made is an admission of all facts alleged in the indictment or

information and a waiver of all non-jurisdictional defenses." *Moore v. United States*, 425 F.2d 1290,

1291 (5th Cir. 1970) (citing *Henderson v. United States*, 395 F.2d 209 (5th Cir. 1968); *Busby v.*

*Holman*, 356 F.2d 75 (5th Cir. 1966); *Cooper v. Holman*, 356 F.2d 82 (5th Cir. 1966)); *see also*

*United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) ("A guilty plea, since it admits all

the elements of a formal charge, waives all nonjurisdictional defects in the proceedings against a

defendant.") (quoting *United States v. Jackson*, 659 F.2d 73, 74 (11th Cir. 1981)).  Given the legal

effect of a plea of guilty, further apprisal becomes superfluous after the guilty plea and at sentencing.

By challenging the absence of an indictment at this stage, Defendant requests the court to

indulge in his fiction that he is unaware of the charges to which he pleaded guilty.  A careful

inspection of the record, however, reveals Defendant's complete understanding of the pending

charges and admission of the facts supporting them.  Specifically, during the plea colloquy, the court

explicitly reviewed each count of the indictment with Defendant, and Defendant acknowledged that

he understood them:

> The Court:   What I want to do is cover with you the counts
> in the indictment to make sure you understand
> how that operates, how that works.
> Count one charges you with violating 21,
> United States Code, Section 841(a)(1) and
> (b)(1)(B) and (b)(1)(C) which is possession
> with the intent to distribute a controlled
> substance which is a felony.
> Before you could be convicted of that count,
> the following facts must be proved by the
> government beyond a reasonable doubt to a
> jury:
> First, that you knowingly and willfully
> possessed a mixture and substance containing
> a detectable amount of cocaine base, more
> commonly referred to as crack cocaine, as
> charged; and second, that you possessed the

substance with the intent to distribute it.

To possess with intent to distribute means to possess with the intent to deliver or transfer possession of a controlled substance, and crack cocaine is a controlled substance within the meaning of the law, to another person, with or without any financial interest in the transaction.

Do you understand what the government would have to prove beyond a reasonable doubt to convict you of that charge?

The Defendant:          Yes, sir.

The Court:              Count two of the indictment charges that you violated 18, United States Code, Section 924(c)(1)(A)(i), which is carrying a firearm during and in relation to a drug trafficking crime, that is a separate felony offense.

In order to be found guilty of that offense, as charged in count two of the indictment, the government would have to prove the following facts beyond a reasonable doubt:

First, that you committed the drug trafficking offense charged in count one, the distribution offense we just went over;

Second, during the commission of that offense, you knowingly possessed a firearm;

Third, that you possessed the firearm in relation to the drug trafficking offense charged in count one.

The term firearm means any weapon which is designed or may readily be converted to expel a projectile by the action of an explosive.

To possess a firearm means that you either had a firearm on or around your person, or transported, conveyed or controlled the firearm in such a way that it was available for immediate use, if you so desired, during the commission of the drug trafficking offense.

To carry a firearm in relation to an offense means that there must be a connection between you, the firearm and the drug

13

|  | trafficking offense so that the presence of the firearm was not accidental or coincidental, but facilitated the crime. |
|---|---|
|  | To possess a firearm in furtherance of an offense means something more than mere presence of the firearm, it must be shown the firearm helped, furthered, promoted or advanced the crime or the offense in some way. |
|  | Do you understand all of that? |
| The Defendant: | Yes, sir. |
| The Court: | The word knowingly means that the act was done voluntarily and intentionally and not because of mistake or accident. |
|  | The word willfully means that the act was committed voluntarily and purposely with a specific intent to do something the law forbids; that is, with bad purpose either to disobey or disregard the law. |
|  | Do you understand the charges against you and what the government would have to prove to convict you of those charges? |
| The Defendant: | Yes, sir. |

(Doc. #23 at 9:9-12:10).  Thereafter, the Government recited the factual basis for Counts I and II as contained in the indictment:

| Mr. Dimler: | The government would expect the evidence to show that on November 12th, 2005, Jefferson County sheriff's office deputy Barton conducted a traffic stop of the defendant, James LeRay McIntosh, Jr.  After checking the vehicle tag against NCIC, ACGIS and learning that it had a suspended license and outstanding warrants, the defendant was asked and initially identified himself as Barry Lewis, but could not produce identification or identifiers.  While talking with McIntosh, the officer noticed an open container of alcoholic |
|---|---|

14

beverage in the back floorboard.

The defendant ultimately admitted to being James McIntosh and was arrested pursuant to the warrants.

During an inventory search of the vehicle, prior to towing, the following items were recovered from the glove box: A Ruger 9 mm pistol, scales, a bag of crack cocaine, a bag of powder cocaine, Xanax tablets. The total weight was approximately 20 grams. And I want to say the lab report came out at 20.32 grams. The total weight of the powder cocaine was approximately 17 grams, which I believe the laboratory revealed 17.03 grams.

When the defendant was searched incident to arrest, he was found to be in possession of one thousand four hundred and thirty-nine dollars of U.S. currency.

The defendant, after waiving his Miranda rights, admitted owning the firearm and controlled substances in the vehicle.

(Doc. #23 at 17:22-18:25). Except to the extent that the Government alleged drug quantities over five grams, Defendant "agree[d] and stipulate[d]" to the facts as presented. (Doc. #23 at 19:5-20:23). Additionally, Defendant admitted that, instead of mere possession, he possessed the illegal drugs with the intent to distribute. (Doc. #23 at 21:4-21:21). Finally, after the court explained the charges and Defendant admitted the predicate facts, he unconditionally pleaded guilty:

|  |  |
|---|---|
| The Court: | To the offense of violating 21, United States Code, Section 841(a)(1), (b)(1)(B) and (b)(1)(C), which is possession with the intent to distribute powder cocaine and crack cocaine, as charged in count one, how do you plead? |
| The Defendant: | Guilty. |
| The Court: | As to the offense of violating 18, United States Code, Section 924(c)(1)(A)(i), carrying |

15

|                   | a firearm during and in relation to the drug trafficking crime, how do you plead? |
|-------------------|-------------------------------------------------------------------------------------|
| The Defendant:    | Guilty. |
| The Court:        | It is the finding of the court in this case of United States of America vs. James LeRay McIntosh, the defendant is fully competent and capable of entering an informed plea, he is aware of the nature of the charges and the consequences of the plea, and the plea of guilty is a knowing and voluntary plea supported by an independent basis of fact, the plea is accepted and the defendant is now adjudged guilty of the offenses. |

(Doc. #23 at 23:19-24:13).

Based on this colloquy and the facts of this case, the court concludes that the Indictment served its constitutional purpose by notifying Defendant of the charges pending against him and the facts upon which the charges rested.  Defendant has not contested this court's finding that he knowingly and voluntarily pleaded guilty to the offenses charged in the initial indictment.  More importantly, once Defendant pleaded guilty, he admitted to the underlying facts contained in the indictment, which rendered it unnecessary to have a document that had already provided a "continuing" notification of charges and factual bases.  That is, the Indictment had already served its purpose in this respect.  It had notified Defendant of the charges against him.  This conclusion comports with the Eleventh Circuit's observation that Defendant's "conviction still exists and awaits a sentence."  *McIntosh*, 580 F.3d at 1228.

Finally, an indictment is intended to protect against double jeopardy.  A simple review of this case's procedural history reveals how the Indictment was effective as a safeguard in this manner.  The Eleventh Circuit, on appeal, concluded that the second indictment returned after Defendant's

16

guilty plea and the court's dismissal of the first indictment created double jeopardy. *McIntosh*, 580 F.3d at 1229. It is apparent, therefore, that the existence of a *conviction*, resting upon Defendant's factual admissions, sufficiently guards against re-prosecution even without an indictment. Therefore, to the extent that he may face future jeopardy covering the same offenses involved here, Defendant may plead *autrefois convict* based on his conviction.

In sum, Defendant's contention assumes that an indictment is essential, at all stages, as an end itself. As discussed above, however, an indictment serves as a proxy to ensure ancillary constitutional goals. That is, an indictment has only instrumental constitutional value, and Defendant undisputedly received (1) the benefit of grand jury consideration, which thereby checked prosecutorial discretion, (2) notice of pending charges sufficient to permit his preparation of a defense, and (3) protection against double jeopardy. Defendant has not identified any other safeguards ensured through indictment. Furthermore, Defendant has not located any case hinting at an indictment's relevance to sentencing, and the cases, insofar as they acknowledge a waiver of non-jurisdictional indictment defects at the guilty plea, strongly suggest the indictment's irrelevance to sentencing. Because Defendant (1) received the traditional protections associated with prosecution by indictment and (2) has not suggested any particular prejudice resulting from sentencing on the basis of a guilty plea but without an indictment, the court cannot assign constitutional error.[4]

---

[4]In passing, Defendant suggests that the lack of an indictment at sentencing is structural error: "In fact, the error in this case fits neatly into that category of cases defining certain error as 'structural error' and thus is not subject to harmless error analysis." (Doc. #35 at 6 n.3).

First, aside from a string citation to cases illustrating traditional structural errors, Defendant does not explain his argument beyond the passage immediately quoted.

Second, a structural error "occurs only in the rare instance involving a structural defect affecting the framework within [which] the trial proceeds, rather than simply an error in the trial process itself. Examples of structural error involve extreme deprivations of constitutional rights, such as denial of counsel, denial of self representation at trial, and

**C.**    **Whether the Court Has Jurisdiction, Despite the Dismissal of the Indictment Post-Conviction, to Sentence Defendant**

This court previously concluded that, despite the dismissal of the first indictment, jurisdiction exists to sentence Defendant on the basis of the crimes to which he pleaded guilty.   Among other reasons, the court cited to the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625 (2002), which overruled its earlier decision, *Ex parte Bain*, 121 U.S. 1 (1887).   In *Bain*, after the district court improperly amended the indictment, the Supreme Court held that "the jurisdiction of the offence [was] gone, and the court [had] no right to proceed any further in the progress of the case *for want of an indictment*."   121 U.S. at 13 (emphasis added).   In *Cotton*, the Supreme Court, reversing the Fourth Circuit's reliance on *Bain*, concluded that "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled."   535 U.S. at 631.

The facts of *Cotton* are critical to understanding its effect here.   The indictment charged the defendants as having conspired "to distribute and to possess with intent to distribute a 'detectable amount' of cocaine and cocaine base."   *Cotton*, 535 U.S. at 627-28.   The district court instructed the jury that "the amounts involved are not important," and the jury found the defendants guilty.   *Id.* at 628.   Under § 841(b)(1)(C), "Congress established 'a term of imprisonment of not more than 20 years' for drug offenses involving a detectable quantity of cocaine or cocaine base."   *Id.*   At sentencing, however, the district court found that each of the defendants had been responsible for at least 500 grams of cocaine base.   *Id.*   Therefore, the district court applied the enhanced penalties

---

denial of a public trial." *United States v. Nealy*, 232 F.3d 825, 830 n.4 (11th Cir. 2000) (citations and internal quotation marks omitted).   These errors "render a trial fundamentally unfair" such that the proceeding "cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Neder v. United States*, 527 U.S. 1, 8-9 (1999) (citations and internal quotation marks omitted).   In this case, as described above, Defendant received all protections flowing from an indictment, and he has not suggested anything to the contrary aside from a generic argument that his rights have been violated.   The court, therefore, cannot conclude that the dismissal of an indictment post-conviction amounts to structural error.

under § 841(b)(1)(A), "which prescribes 'a term of imprisonment which may not be . . . more than life' for drug offenses involving at least 50 grams of cocaine base."  *Id.*

Considering only the indictment, the defendants had faced a maximum sentence of 20 years, but the district court sentenced two of the defendants to 30 years' imprisonment and the other defendants to life imprisonment.  *Id.*  The Fourth Circuit, in reversing, reasoned that the district court lacked jurisdiction to sentence the defendants on the basis of offenses not contained in the indictment.  *United States v. Cotton*, 261 F.3d 397, 405 (4th Cir. 2001) ("Accordingly, the district court exceeded its jurisdiction in sentencing the appellants for a crime with which they were never charged . . . .").  Nevertheless, reversing the Fourth Circuit on its jurisdictional analysis and overruling *Bain*, the Supreme Court "[f]reed" the inquiry "from the view that indictment omissions deprive a court of jurisdiction."  *Cotton*, 535 U.S. at 631.

Thus, this court, applying *Cotton*, concluded that the lack of an indictment is jurisdictionally irrelevant for sentencing purposes.  Defendant asserts that this court rendered its decision "despite the clear holding in *Cotton* that [the Supreme Court] had overruled *Bain*, not *in toto*, but simply in part.  Had the [Supreme] Court wished to overrule *Bain* completely, it certainly had the opportunity to do so.  Instead, *Cotton* stated ['][i]nsofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled.'  The remaining portion of the *Bain* holding that the lack of an indictment stripped a court of its jurisdiction over criminal proceedings is still controlling law." (Doc. #35 at 13-14) (quoting *Cotton*, 535 U.S. at 631).  Defendant's interpretation of *Cotton* and its relationship to *Bain* is both strained and inaccurate for three reasons.

First, the *Cotton* Court clarified that the term "jurisdiction," as used in *Bain*, references a doctrine since repudiated:

>*Bain*, however, is a product of an era in which this Court's authority to review criminal convictions was greatly circumscribed. At the time it was decided, a defendant could not obtain direct review of his criminal conviction in the Supreme Court. The Court's authority to issue a writ of habeas corpus was limited to cases in which the convicting court had no jurisdiction to render the judgment which it gave. In 1887, therefore, this Court could examine constitutional errors in a criminal trial only on a writ of habeas corpus, and only then if it deemed the error "jurisdictional." The Court's desire to correct obvious constitutional violations led to a somewhat expansive notion of jurisdiction, which was more a fiction than anything else. *Bain*'s elastic concept of jurisdiction is not what the term "jurisdiction" means today, *i.e.*, the courts' statutory or constitutional power to adjudicate the case. *This latter concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court. In contrast, the grand jury right can be waived.*

*Cotton*, 535 U.S. at 629-30 (internal citations, quotation marks, and footnote omitted) (emphasis added).[5] Accordingly, the *Cotton* Court confined the entirety of *Bain*'s jurisdictional treatment to a particular historical period. Defendant's suggestion, therefore, that *Bain*'s rule regarding jurisdiction partially survived *Cotton* is simply at odds with the Supreme Court's unequivocal clarification to the contrary.[6]

Second, the *Cotton* Court concluded that "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled." *Cotton*, 535 U.S. at 631. From this statement,

---

[5]As an aside, Defendant repeatedly attempts to distinguish this case from *Cotton* because the *Cotton* defendants failed to object to the indictments' defects: "[This court] equates an unobjected to indictment, facially valid yet flawed with respect to the mere failure to allege facts triggering a sentencing enhancement, with no indictment at all." (Doc. #35 at 12). Similarly, Defendant asserts that "the defendants in *Cotton* failed to object to the flaw in the valid indictment until appeal when the only recourse available to the defendants was to argue that the court lacked jurisdiction to sentence the defendants above the statutory maximum found in 21 [U.S.C.] § 841(a)." (Doc. #35 at 11). As the final two sentences in the above-quoted passage from *Cotton* reveal, however, whether the defendants objected is irrelevant, as subject matter jurisdiction is an ongoing assessment unaffected by acquiescence.

[6]Moreover, even assuming *arguendo* the accuracy of Defendant's representation, the court is perplexed as to the application of a now defunct doctrine to the current case.

according to Defendant, *Cotton* distinguishes between prosecution by defective indictment and sentencing without indictment.  (Doc. #35 at 13-14).  Under this reading, *Cotton* controls when an indictment is merely defective, whereas *Bain* controls when there is no indictment at all. Defendant's interpretation of *Cotton*, which hinges on the word "insofar," wholly disregards the context of the Court's conclusion.  Immediately preceding the above-quoted statement, the Supreme Court clarified:

> Thus, this Court some time ago departed from *Bain*'s view that indictment defects are "jurisdictional."  *Bain* has been cited in later cases such as [*Stirone v. United States*] and [*Russell v. United States*] for the proposition that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.  But in each of these cases proper objection had been made in the District Court to the sufficiency of the indictment. We need not retreat from this settled proposition of law decided in *Bain* to say that the analysis of that issue in terms of "jurisdiction" was mistaken in the light of later cases such as *Lamar* and *Williams*. Insofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled.

*Cotton*, 535 U.S. at 631 (internal citations and quotation marks omitted).  Read in context, therefore, it is abundantly clear that the Court intended to preserve only *Bain*'s treatment of an amendment to an indictment.  Defendant's interpretation of the final sentence of this paragraph is plausible only if the preceding sentences are ignored.  In short, *Cotton* permanently and completely retired *Bain*'s rule regarding an indictment's jurisdictional impact.[7]

---

[7]Defendant attempts to blunt this conclusion by referencing the following exchange, between the Government and Justice Scalia, during the oral argument for *Cotton*:

QUESTION:    Mr. Dreeben, I – I'm not sure I – you say we should determine whether substantial rights have been affected by – by asking whether if the procedure that has been omitted had not been omitted, he would have been – he would have been convicted anyway.  I – I just – that – that seems to me extravagant.  I mean, that – that would mean that if there were no indictment at all, you just go to the jury without an indictment and the jury convicts

Third, Defendant argues that the court erred when it "equate[d] an unobjected to indictment, facially valid yet flawed with respect to the *mere* failure to allege facts triggering a sentencing enhancement, with no indictment at all."  (Doc. #35 at 12) (emphasis added).  Defendant clarifies this contention:

> [I]t should also be noted that the substantive offense charged against the defendant in *Cotton* is found in [§] 841(a) while [§] 841(b) simply enhances penalties for violations of [§] 841(a) under certain circumstances.  In this light, the holding of *Cotton* does not break new ground in any sense, but simply is an attempt to clarify existing law.  Had the defendants in *Cotton* been charged with failure to file income tax returns, yet were sentenced for possession with intent to distribute a controlled substance then *Cotton* would certainly have broken new ground and been consistent with the Court's order interpreting *Cotton* to authorize the imposition of sentence irrespective of the offenses actually contained in the indictment.

(Doc. #35 at 11 n.6).  Defendant's argument, however, underestimates the constitutional significance of an *Apprendi* violation.

--------

> him of murder, you could come in and say, well, his substantial rights weren't affected because had there been a murder indictment, there was plenty of evidence to – to convict him of murder.  Is – is that the position the Government's taking?
>
> MR. DREEBEN: No, it's not the position that we're taking, Justice Scalia.  And the logic of – of the Government's position in this case doesn't have to go to a total omission of any grand jury indictment at all.  Just as in *Neder*, the Court made perfectly clear that although harmless error analysis would apply to the omission of an element, it would not apply to a directed verdict –
>
> QUESTION: No, but my – my point is it seems convicted anyway.  Even though he would have been convicted anyway, in some cases they simply say there was no indictment.  His substantial rights were affected.  Period.

Oral Argument Transcript for *United States v. Cotton* at 21:13-22:14.

This question, however, references the constitutional analysis associated with indictment omissions and whether and to what extent a defendant's substantial rights are affected.  *See Cotton*, 535 U.S. at 632 ("The third inquiry is whether the plain error 'affected substantial rights.'").  Justice Scalia's question, therefore, concerned only the secondary holding in *Cotton* (*i.e.*, the Fifth Amendment analysis) as opposed to the jurisdictional holding, which is applicable here.  Whether Justice Scalia would distinguish between an indictment omission and the absence of indictment under the plain error analysis is an inquiry distinct from the jurisdictional conclusions reached by the Court.

In *Cotton*, the Government had conceded that "the indictment's failure to allege a fact, drug quantity, that increased the statutory maximum sentence rendered [the defendants'] enhanced sentences erroneous under the reasoning of *Apprendi* and *Jones*.  The Government also [had] concede[d] that such error was plain." *Cotton*, 535 U.S. at 632.  Operating under those assumptions, the Supreme Court nevertheless concluded that the district court had jurisdiction to sentence the defendants on the basis of an indictment that failed to allege facts necessary to trigger the enhancements.  *Id.* at 631.  The Court's conclusion, in light of those assumptions, is instructive as to this case.

Under *Apprendi*, a fact that warrants a sentencing enhancement, *i.e.*, a fact that authorizes sentence beyond the statutory maximum, constitutes an element of the offense.  Indeed, after *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  A sentencing enhancement "is the functional equivalent of *an element of a greater offense* than the one covered by the jury's guilty verdict.  Indeed, it fits squarely within the usual definition of an 'element' of the offense." *Id.* at 494 n.19 (emphasis added).

Through the lens of *Apprendi*, facts warranting § 841(b)(1)(A) penalties are not necessarily the "same offense" as facts warranting § 841(b)(1)(C) penalties.  Albeit related, the two penalty provisions, as reviewed in *Cotton*, amount to separate offenses because the district court sentenced over the maximum statutory penalty under § 841(b)(1)(C) and based on the greater drug quantity. *See United States v. Clay*, 376 F.3d 1296, 1301 (11th Cir. 2004) ("[S]pecification of quantity does not become essential unless the amount of the drugs involved is used to increase the defendant's

23

sentence beyond the applicable maximum penalty for the smallest detectable quantity."); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) ("An indictment must set forth each element of the crime that it charges."); *United States v. Westry*, No. 05-206, 2006 U.S. Dist. LEXIS 11761, at *10 n.4 (S.D. Ala. Mar. 3, 2006) ("[E]ven drug quantity is an element of the offense under § 841, at least where it serves as a basis for imposing sentence in excess of the 20-year default statutory maximum.") (citing *Clay*, 376 F.3d at 1301; *United States v. Gonzalez*, 420 F.3d 111, 131 (2d Cir. 2005)).

The elements contained in the *Cotton* indictment did not correlate with the sentence imposed. The quantities, in the context of *Cotton*, were not "mere" sentencing factors, as Defendant suggests. Rather, the quantities were elements of the crime, and without their inclusion in the indictment, the crime *charged* was something other than the crime to which the defendants had been *sentenced*.  In fact, the Fourth Circuit's decision (which *Cotton* reversed) reached the same conclusion: "[T]he district court sentenced the appellants for a crime with which they were never charged. . . . Accordingly, the district court exceeded its jurisdiction in sentencing the appellants for a crime with which they were never charged . . . ."  *United States v. Cotton*, 261 F.3d 397, 405 (4th Cir. 2001) (citations omitted).

In light of the error's magnitude, the court reiterates its initial conclusion.  To the extent that this case and *Cotton* are factually different, the difference is without a distinction: a sentence pronounced on the basis of an indictment, which includes some but not all charges, is jurisdictionally tantamount to a sentence pronounced on the basis of a guilty plea entered pursuant to a now dismissed indictment.  Distinguishing this case from *Cotton*, merely because an indictment was

technically present, unduly prioritizes form over substance.[8]

The Fourth Circuit's decision in *United States v. Hartwell*, 448 F.3d 707 (4th Cir.), *cert. denied*, 549 U.S. 938 (2006), further reinforces this court's application of *Cotton* to the present case. In *Hartwell*, the defendant pleaded guilty "to a one-count criminal *information* charging him with murder-for-hire resulting in death." 448 F.3d at 709 (emphasis added). The charged offense carried a maximum penalty of death; accordingly, the defendant could not have waived the right to prosecution by indictment. *Id.* at 714.[9] The district court sentenced the defendant, and on appeal, he "contend[ed] that the district court never had subject-matter jurisdiction in [the] case because the government proceeded on an information instead of an indictment for a crime punishable by death." *Id.* at 709. The Fourth Circuit, in light of *Cotton* and *Kontrick v. Ryan*, 540 U.S. 443 (2004),[10]

---

[8]Defendant's interpretation of *Cotton*, on the other hand, yields an overly formalistic result. Specifically, if an indictment, which contains some but not all of the required elements properly invokes jurisdiction to sentence on account of the greater offense, then conceivably a piece of paper labeled "indictment," titled according to the relevant United States Code section, and without any elemental reference similarly must invoke jurisdiction. According to Defendant's theory, which assumes that indictment defects – such as omitting elements – do not affect jurisdiction but the altogether absence of an indictment does affect jurisdiction, anything short of such a bare indictment would defeat federal jurisdiction. A more plausible and coherent reading of *Cotton* that avoids indeterminate line-drawing over sufficient elemental inclusion (and, therefore, suffers from *Bain*-style amalgamation of constitutional errors and jurisdictional defects) considers jurisdiction independent of the indictment's formalities.

[9]According to Federal Rule of Criminal Procedure 7(a), "[a]n offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year." But "[a]n offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant – in open court and after being advised of the nature of the charge and of the defendant's rights – waives prosecution by indictment." FED. R. CRIM. P. 7(b). Rule 7, therefore, does not authorize waiver when the charged offense is capital.

[10]The Fourth Circuit offered the following summary of *Kontrick*'s salient points:

The Supreme Court again elaborated on the confusion engendered by an imprecise use of the term "subject-matter jurisdiction" in [*Kontrick v. Ryan*]. There, the Court noted that only Congress may alter a district court's subject-matter jurisdiction and that court-prescribed rules of practice and procedure neither create nor withdraw jurisdiction. Such rules merely prescribe the method by which the jurisdiction granted the court by Congress is to be exercised. The Court then exhorted that [c]larity would be facilitated if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases . . . and the persons . . . falling with the court's adjudicatory authority. Subject-matter jurisdiction cannot be altered on the basis of the parties' litigation

rejected the defendant's argument and reached the following conclusion:

> Rule 7 is just such a claim-processing rule. It describes the process by which a defendant must be charged in order to comply with the Fifth Amendment requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," and the process by which a defendant may waive the protections of that Amendment. Although Rule 7 does not permit a defendant charged with a capital crime to waive indictment, it does not follow that noncompliance is a defect of subject-matter jurisdiction. *The district court's jurisdiction is conferred by 18 U.S.C. § 3231 and may not be affected by the litigation conduct of the parties. Thus, if permitting [the defendant] to be charged by information were error, it was not an error that denied the district court the power to adjudicate the federal criminal prosecution.*

*Id.* at 717 (emphasis added).

The Fourth Circuit's holding illustrates that an indictment is a personal protection unrelated to a federal court's jurisdiction. Similarly reflecting this distinction, the Eleventh Circuit, prior to *Cotton*, concluded that the right to an indictment is a constitutional entitlement that does not affect federal adjudicatory power: "The constitutional right to be charged by a grand jury is a personal right of the defendant and does not go to the district court's subject matter jurisdiction because it may be waived. Thus, the constitutional right to be charged by grand jury indictment simply does not fit the mold of a jurisdictional defect, because it is a right that plainly may be waived." *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (citing FED. R. CRIM. P. 7(b)).[11]  After *McCoy*, the

---

conduct. [A] claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.

*Hartwell*, 448 F.3d at 717 (citations and internal quotation marks omitted).

[11] According to Federal Rule of Criminal Procedure 7(b), "[a]n offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant – in open court and after being advised of the nature of the charge and of the defendant's rights – waives prosecution by indictment."

Eleventh Circuit, sitting en banc, further examined whether and to what extent the indictment plays

a jurisdictional role:

> A jurisdictional defect occurs only where a federal court lacks power to adjudicate at all. The constitutional rights to be charged by a grand jury, be informed of an accusation, and to have a jury trial are the personal rights of the defendant and do not go to the district court's subject matter jurisdiction. Indeed, Federal Rule of Criminal Procedure 7(b) provides that certain offenses may be prosecuted by information if the defendant waives in open court prosecution by indictment. Such waiver would not be possible if the indictment-related right were jurisdictional, as parties cannot confer subject-matter jurisdiction on federal courts by consent.

*United States v. Sanchez*, 269 F.3d 1250, 1273-74 (11th Cir. 2001) (en banc) (citing Fed. R. Crim.

P. 7(b); *United States v. Griffin*, 303 U.S. 226, 229 (1938); *United States v. Cromartie*, 267 F.3d

1293 (11th Cir. 2001); *McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001)). And this court's

Memorandum Opinion reflected the demarcation between a constitutional right, particular to an

individual, and a jurisdictional prerequisite, unaffected by litigation conduct:

> The court's analysis should not be interpreted as downplaying the indictment's role. Indeed, a defendant has a substantial right to be tried solely on charges presented in an indictment returned by a grand jury, and that right is defeated when a defendant is later subjected to prosecution for an offense not charged by the grand jury. In this case, only after Defendant pleaded guilty did the court dismiss the first indictment. Accordingly, the protections provided through indictment (*i.e.*, providing notice of pending charges to afford Defendant an opportunity to prepare a defense) were secured in this case, and Defendant has not suggested anything to the contrary.
> 
> *In short, although the court appreciates the relevance of an indictment in general, the court's conclusion in this case, consistent with Cotton, merely disentangles the jurisdictional inquiry from the constitutional requirements contained in the Fifth Amendment.*

(Doc. #32 at 10 n.6) (citations and internal quotation marks omitted) (emphasis added).

Although *McCoy* and *Sanchez* arose in the context of *Apprendi* errors, the distinction between personal rights and jurisdictional predicates applies equally here. Defendant summarily responds to this point: "The defendant would point out that *McCoy* dealt with an indictment issue very similar to the issue in *Cotton* in that the challenge to the indictment was with respect to the lack of a reference to particular drug quantities in an otherwise existing and valid indictment." (Doc. #35 at 9 n.5).

Defendant's attempt at distinguishing these cases misses the mark. The underlying defects involved with *McCoy* and *Sanchez* are ultimately irrelevant as to whether an indictment is jurisdictionally critical. In these cases, the Eleventh Circuit addressed whether and to what extent factual omissions from an indictment affect federal jurisdiction. When the Eleventh Circuit highlighted that a defendant's Rule 7(b) waiver does not implicate federal jurisdiction, the reference revealed that the greater (*i.e.*, the complete absence of an indictment) necessarily must include the lesser (*i.e.*, the omission of certain facts from the indictment).

Defendant generally argues that "[a] reading of the Fifth Amendment and precedent establish an indictment is a jurisdictional predicate and prerequisite and is a firmly entrenched right in American Jurisprudence." (Doc. #35 at 7). In support of his position, he cites to several cases – each decided prior to *Cotton* – that assert abrogated rules of jurisdiction. Defendant first cites to *United States v. Moore* for the proposition that "[u]nless there is a valid waiver, the lack of an indictment in a federal felony case is a defect going to the jurisdiction of the court." 37 F.3d 169, 173 (5th Cir. 1994) (quoting *United States v. Montgomery*, 628 F.2d 414, 416 (5th Cir. 1980)). *Moore* relies on *Montgomery*, which in turn relies on *United States v. Macklin*, 523 F.2d 193, 196 (2d Cir. 1975). In *Macklin*, the Second Circuit held that "[t]he absence of an indictment is a

jurisdictional defect which deprives the court of its power to act.  Such a jurisdictional defect cannot be waived by a defendant, even by a plea of guilty."  523 F.2d at 196.  Importantly, to reach that conclusion, the Second Circuit cited to *Bain* and *Ex parte Wilson*, 114 U.S. 417 (1885).  *Id.*  In *Bain*, the Supreme Court, insofar as it analyzed an indictment's jurisdictional connection, cited to *Ex parte Wilson* for the rule that a defective indictment stripped a federal court of jurisdiction: "The case comes within the principles laid down by this court in *Ex parte Lange*[;] *Ex parte Park*[;] *Ex parte Wilson*[;] and other cases."  *Bain*, 121 U.S. at 14.  Accordingly, *Cotton* necessarily overruled the earlier cases that *Bain* merely echoed (*i.e.*, *Bain* and *Wilson* are simply two sides of the same doctrinal coin).[12]  In sum, Defendant's reliance on *Moore* is no more than reliance on *Bain*, which as discussed above, no longer accurately states the law regarding an indictment's jurisdictional significance.

Similarly, Defendant cites to *United States v. Longoria* for the proposition that "[f]ailure to charge an offense in the indictment is a jurisdictional error.  The grand jury's issuance of an indictment is what gives federal courts jurisdiction to hear a criminal case and impose a sentence."  259 F.3d 363, 365 (5th Cir. 2001).  The Fifth Circuit cited to two cases as support for this point: *United States v. Richards*, 204 F.3d 177 (5th Cir. 2000), and *United States v. Cabrera-Teran*, 168 F.3d 141 (5th Cir. 1999).  In *Richards*, the Fifth Circuit, quoting *Cabrera-Teran*, observed that an "indictment's failure to charge an offense is a jurisdictional defect."  204 F.3d at 191 (quoting

---

[12]The court is aware of the general rule that "if a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the district and circuit courts] should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citation omitted).  The interrelationship between *Bain* and *Wilson*, however, does not present such a scenario.  Instead, *Bain*, without explication, referenced the rule of law as stated in *Wilson*.  *See Bain*, 121 U.S. at 14.  When the Court overruled *Bain*, it necessarily abrogated *Wilson*'s jurisdictional holding because (1) *Bain* simply relied on *Wilson* and (2) consistent with the Court's late nineteenth century view regarding jurisdiction, *Wilson* conflated "constitutional error" with "jurisdictional defect."

*Cabrera-Teran*, 168 F.3d at 143).

On the one hand, this view, as stated in *Richards* and *Cabrera-Teran*, correlates with Eleventh Circuit caselaw.  In *McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001), Judge Barkett concurred in the result and, citing to *Bain*, observed that "[t]he power, or lack thereof, to try defendants on the specific charges made in an indictment is the essence of the court's criminal jurisdiction." *McCoy*, 266 F.3d at 1263 (Barkett, J., concurring in result).  In response, the majority stated that "[t]he concurring opinion adopts an essentially categorical approach that treats all indictment problems the same way without recognizing the significant differences between the nature of *Apprendi* error and other distinctly different indictment problems. . . . [O]ne type of indictment problem that is involved in some of the decisions cited by the concurring opinion is where the indictment is defective because it charged no crime at all. . . . This, however, is not a case where a defect in an indictment results in the indictment charging no crime at all." *Id.* at 1252-53 (majority opinion).

To illustrate an indictment "charging no crime at all," the Eleventh Circuit cited to *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980). *Id.* at 1253.  In *Meacham*, the defendants were charged with and convicted of attempting to distribute, to possess, and to import marijuana.  626 F.2d at 507-08.  As the former Fifth Circuit explained, however, Congress had not then statutorily authorized the prosecution of individuals for those offenses.  *Id.* at 508-09.  Accordingly, the offenses charged fell outside the scope of a federal court's jurisdiction.  *Id.*  Although the defendant had pleaded guilty, the court permitted his jurisdictional challenge.  *Id.* at 510.[13]

---

[13]Furthermore, in the Eleventh Circuit, the failure to charge an offense has a limited impact on jurisdiction.  In Defendant's initial opposition to sentencing, he argued that Rule 12(b)(3)(B) hints at the indictment's jurisdictional relevance.  (Doc. #30 at 2-5).  In the Memorandum Opinion, this court made the following observation in light of

The Eleventh Circuit's reference in *McCoy*, therefore, to an indictment that "charge[s] no crime at all" involves the prosecution of crimes that are beyond the borders of federal jurisdiction, *i.e.*, crimes for which Congress has not authorized prosecution.  Stated plainly, a federal court is without jurisdiction *only* over the prosecution of acts or omissions that Congress has not criminalized.  *See Mayberry v. United States*, 156 Fed. App'x 265, 266 (11th Cir. 2005) ("[A] district court lacks jurisdiction when an indictment alleges only a non-offense, or rather, when the government alleges a specific course of conduct outside the reach of the applicable statute.") (citations omitted).

Consistent with this view, the court explained in the Memorandum Opinion that Congress is exclusively tasked with calibrating federal jurisdiction and has done so without reference to the

---

Defendant's argument:

> Assuming *arguendo* the accuracy of Defendant's contention, the practical result would be bizarre.  For example, if an indictment contained allegations patently infirm on both statutory and constitutional grounds, such that the indictment was equivalent to no indictment at all, then the district court would be powerless to even dismiss the indictment on request of the defendant.  The Eleventh Circuit, however, has already rejected that suggestion.  *See Alikhani v. United States*, 200 F.3d 732, 735 (11th Cir. 2000) ("[The defendant] has cited no case, and we have located none, holding that the failure of an indictment to state an offense . . . divests the district court of the power even to enter a judgment of acquittal.").

(Doc. #32 at 9 n.5).  To this point, Defendant responds:

> It is respectfully noted that if the Grand Jury were to return such an indictment that the Defendant would be required to respond and appear at the arraignment and would, at the appropriate time, ask the court to make the conclusion described and to enter the appropriate Order.  Counsel did not mean to suggest that at arraignment, upon presentation of the indictment, should it be found as deficient as described, that the Defendant, counsel for the accused, the Assistant United States Attorney and the Magistrate would be held hostage in perpetuity for lack of any controlling rule.  Counsel is more than comfortable with the court entering the required Orders under such a circumstance.  Counsel is also confident in the knowledge that if the Government could not produce an indictment at arraignment, that any of the magistrates of the Northern District would allow the Defendant to leave the building without restraint or condition.

(Doc. #35 at 15).  Despite his practical solution, Defendant's suggestion fails to account conceptually for the sort of indictment described by the court in the Memorandum Opinion.  Specifically, applying Defendant's logic generally, a federal court would be powerless to dismiss an indictment that is fatally defective and amounts to no indictment at all.  But as this court noted, the Eleventh Circuit already has rejected that theory.

presence (or absence) of an indictment:

> Finally, and perhaps most compelling, examining Congress's grant of jurisdiction over criminal cases supports the court's conclusion that jurisdiction is proper. In the context of federal criminal law, the relevant statutory grant is 18 U.S.C. § 3231, which provides district courts with exclusive, original jurisdiction over "all offenses against the laws of the United States." Given § 3231's unconditional language, Defendant's argument would require judicial revision of the statute's plain text. As the statute is written, jurisdiction exists over federal crimes without specified conditions precedent. If the court accepted Defendant's argument, then jurisdiction becomes conditioned on the presence or absence of an indictment in addition to the presence of a validly enacted criminal statute. But '[s]ubject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231 . . . . That's the beginning and the end of the jurisdictional inquiry." *McCoy v. United States*, 266 F.3d 1245, 1252 n.11 (11th Cir. 2001) (quoting *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999)). Congress has not definitively tied jurisdiction to the presence of an indictment, and the court is unwilling to supply such a link. Although Rule 12(b)(3)(B) obliquely hints at an indictment's jurisdictional import, that rule is not the sort of unequivocal congressional directive required to alter federal jurisdiction.

(Doc. #32 at 8-9).

Defendant criticizes the court's interpretation of § 3231 by classifying it as "too broad" and

a possible infringement on the presumption of innocence:

> The court's reading of 18 [U.S.C.] § 3231 is far too broad. The import of 18 [U.S.C.] § 3231 is to confer jurisdiction upon the court in cases where violations of the laws of the United States are alleged in a valid indictment, or information where an indictment is knowingly and intelligently waived. *See Simons v. United States*, 119 F. 2d 539 (9th Cir. 1941) ("This is a broad and comprehensive grant, and gives the courts named power to try every criminal case cognizable under the authority of the United States, subject to the controlling provisions of the Constitution.")[.] Reading the statute too literally can lead to a conclusion that the court only has jurisdiction over offenses if, in fact, the court has made a determination that an offense has been committed, thus the mere

invocation of this court's jurisdiction would be an attack on the presumption of innocence. For if the court only has jurisdiction over "offenses committed against the United States," the court, by accepting jurisdiction, would also be making a finding that the allegation is true.  If the court did not know if a violation had occurred or was unsure, then the court would have to decline jurisdiction.  That is, of course, not what the statute is intended to stand for.

Respectfully, 18 [U.S.C.] § 3231 must be read in the [c]onstitutional and procedural context in within [sic] which it is found.

(Doc. #35 at 17-18) (record citation omitted).

First, Defendant's argument is flawed because he requests the court to graft an indictment requirement onto the jurisdictional grant contained in § 3231.  According to § 3231, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  As the Eleventh Circuit recognized, "subject matter jurisdiction in every federal criminal prosecution comes from [§ 3231]" and "that's the beginning and the end of the 'jurisdictional' inquiry."  *McCoy*, 266 F.3d at 1252 n.11 (citation omitted).  Although Congress may "create additional statutory hurdles to a court's subject matter jurisdiction through separate jurisdictional provisions found in the substantive criminal statute itself under which a case is being prosecuted," *United States v. Tinoco*, 304 F.3d 1088, 1105 n.18 (11th Cir. 2002), this case does not present such a scenario.  In 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)-(C) and 18 U.S.C. § 924(c)(1)(A)(I), of which Defendant has been convicted, the statutory language does not contain any additional thresholds for securing federal jurisdiction.  Accordingly, to accept Defendant's argument would require this court to disregard the plain language of § 3231, which authorizes the exercise of jurisdiction notwithstanding the presence (or absence) of an indictment.

33

Second, Defendant's argument regarding the arguable impact on the presumption of innocence is merely another straw man tactic.  Defendant construes this court's conclusion concerning *only* jurisdiction as generally validating a prosecution to initiate without indictment.  Noticeably, however, the court carefully excluded constitutional errors from the scope of its jurisdictional assessment:

> The court's analysis should not be interpreted as downplaying the indictment's role.  Indeed, "[a] defendant has a substantial right to be tried solely on charges presented in an indictment returned by a grand jury," and "[t]hat right is defeated when a defendant is later subjected to prosecution for an offense not charged by the grand jury." *United States v. Blizzard*, 615 F.2d 1080, 1082 (5th Cir. 1980) (citations omitted).  In this case, only after Defendant pleaded guilty did the court dismiss the first indictment.  Accordingly, the protections provided through indictment (*i.e.*, providing notice of pending charges to afford Defendant an opportunity to prepare a defense) were secured in this case, and Defendant has not suggested anything to the contrary.
>
> *In short, although the court appreciates the relevance of an indictment in general, the court's conclusion in this case, consistent with Cotton, merely disentangles the jurisdictional inquiry from the constitutional requirements contained in the Fifth Amendment.*

(Doc. #32 at 10 n.6) (emphasis added).  Of course, commencing criminal proceedings without an indictment (and without a defendant's requisite waiver) would deprive the accused of his Fifth Amendment right not to "be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."  U.S. CONST. amend. V.  But in such a defective proceeding, the question of jurisdiction would be distinct from and subordinate to the more significant constitutional error concerning the defendant's personal right to be apprised of the crimes charged.  Although proper invocation of jurisdiction may be possible under those circumstances, the prosecution itself would be a non-starter because of a fatal *procedural* violation.

In any event, Defendant's suggested scenario is plainly not this case.  Here, unlike the hypothetical proceeding, the grand jury *did* return an indictment, which set forth the Government's basis for invoking this court's jurisdiction, and Defendant pleaded guilty to those charges, which resulted in his conviction.  As this court clarified in the Memorandum Opinion, "in the usual course of events, the instrument consulted to assess jurisdiction is the indictment, which contains a shorthand account of the statutory basis for the prosecution."  (Doc. #32 at 9).  Nevertheless, a proceeding in this case's current "posture does not foreclose the possibility of assessing jurisdiction. At this stage, the inquiry is straightforward: has Defendant been *convicted* of 'offenses against the laws of the United States,' as required under § 3231?"  (Doc. #32 at 10).[14]

Applying these statutory principles here, the court concludes without hesitation that it has subject matter jurisdiction to sentence Defendant.  Defendant has not contended that the offenses to which he pleaded guilty are beyond the scope of congressional authorization.  These offenses are not "non-crimes" in the *Meacham* sense; rather, they are offenses against the United States, which clearly fall under the purview of federal criminal jurisdiction.  Although parties cannot consent to federal jurisdiction, the parties may invoke federal jurisdiction by stipulating to predicate facts.  *See, e.g., Gallaher v. United States*, 271 Fed. App'x 946, 946-47 (11th Cir. 2008) (citing *Eng'g Contractors Ass'n v. Metro. Dade County*, 122 F.3d 895, 905 (11th Cir. 1997); *W. Peninsular Title Co. v. Palm Beach County*, 41 F.3d 1490, 1492 n.4 (11th Cir. 1995); *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983)).  In this case, when Defendant admitted to committing federal offenses, jurisdiction, initially secured through indictment, was confirmed independently through

---

[14] Contrary to Defendant's suggestion, the court need not outline the appropriate procedure for assessing whether federal jurisdiction exists absent an indictment and prior to a conviction – such a concern is wholly academic and divorced from the facts of this case.

conviction. *See Moore*, 425 F.2d at 1291 ("A plea of guilty knowingly and understandingly made is an admission of all facts alleged in the indictment or information and a waiver of all non-jurisdictional defects.")  The conviction, unaffected by the post-plea dismissal of the indictment, is sufficient on its own to warrant continued federal jurisdiction over this case because it amounts to a stipulation of requisite facts essential to trigger § 3231.  Sentencing, which follows necessarily from conviction, similarly is authorized.

Finally, Defendant appeals to policy considerations in favor of this court concluding that jurisdiction is absent.  In particular, Defendant asserts that the court has "undertaken both the executive and judicial functions in this case."  (Doc. #35 at 21).  According to Defendant, "[p]roceeding to sentencing after the Government has unequivocally abandoned a prosecution shifts a power traditionally exercised by the executive to the judiciary.  As such, the practical import and effect of the court's Order is to alter the separation of powers doctrine."  (Doc. #35 at 22).  Defendant, without elaboration or citation to any authority, identifies the premise of this contention: "The indictment, the document that authorizes the prosecutorial function[,] ceases to exist in this case.  This matter is in form and substance an *ex parte* proceeding."  (Doc. #35 at 22).  To illustrate the "parade of horribles" allegedly springing by implication, Defendant offers the following hypothetical scenarios:

<u>Example #1:</u>

Government: "Your Honor, we determined after the jury's verdict that certain witness testimony was false when given. As the Court is aware, the Government cannot rely on a conviction tainted by perjured testimony. While the Government does not take the position that the Defendant is innocent of the charges, in our view, the indictment and the charges we brought to this court are due to be dismissed."

36

The Court: "Thank you for bringing this matter to my attention.  The motion is granted. The charges are dismissed and the indictment is dismissed.  The Defendant's sentencing date remains set as previously ordered."

### Example #2

Government: "Your Honor, after the entry of the guilty plea in this case, the Government discovered that further prosecution of this matter would violate the Department of Justices' *Petite* Policy.  After consultation with DOJ, we have been ordered to move to dismiss the indictment and the charges in this case."

The Court: "Thank you for bringing this matter to my attention.  The motion is granted.  The charges are dismissed and the indictment is dismissed.  The Defendant's sentencing date remains set as previously ordered."

### Example #3

Government: "Your Honor, after the entry of the guilty plea, the United States Government entered into negotiations with the Defendant's home country. Without disclosing the nature of the bargain and agreements the Government has reached, part of that bargain obligates the Government to move to dismiss the indictment in this case and to dismiss the charges and to return the Defendant to his home country.  Further, all agreements between the United States and the Defendant's home country are null and void if these conditions are not met."

The Court: "Thank you for bringing this matter to my attention. The motion is granted.  The charges are dismissed and the indictment is dismissed.  The Defendant's sentencing date remains set as previously ordered and he will remain in custody pending sentencing. The Government's continued participation is this matter, or lack thereof, is of no moment.  The Defendant committed a crime against the United States as he so admitted. 18 U.S.C. § 3231 gives me jurisdiction over this matter so you cannot prevent me from entering a sentence in this case."

### Example #4

Government: "Your Honor, after the Defendant was found guilty by the jury our office has determined that AUSA Brown acted in reckless disregard of the Defendant's rights in the prosecution of

the case. Counsel for the Defendant has agreed to forego any relief that may be available under the Hyde Amendment if the Government moves to dismiss the indictment and the charges in this case."

The Court: "Thank you for bringing this matter to my attention. The motion is granted. The charges are dismissed and the indictment is dismissed. The Defendant's sentencing date remains set as previously ordered and he will remain in custody. The Government's continued participation in this matter, or lack thereof, is of no moment. The Grand Jury determined that the Defendant committed a crime against the United States and the trial jury agreed. 18 U.S.C. § 3231 gives me jurisdiction over this matter, so you cannot prevent me from entering a sentence in this case even if the Court's restraint upon the Defendant costs the Government millions of dollars in damages."

(Doc. #35 at 23-25). According to Defendant, "pursuant to the court's Order suggesting that a valid indictment becomes an irrelevancy at some point during the proceedings, presumably after a guilty plea or jury verdict, the Government would be wholly unable to put a stop to criminal proceedings irrespective of why it so moved." (Doc. #35 at 23).[15]

These examples share two common traits (both of which are inapplicable here). First, in each example, the court *disregards* the Government's apparent request to halt the proceedings. That assumption is plainly contrary to the procedural history and events of this case. *On the Government's motion*, this court set a sentencing date only after first determining whether its jurisdiction survived the post-conviction dismissal of the indictment. Second, in each example, the Government presumably would have requested to dismiss the charges with prejudice and, therefore,

---

[15]On a related note, Defendant requests the court to ask the Government "whether it has complied with its *Petite* Policy obligations in this case and what reasons it has [for] deviating from the policy in this particular instance." (Doc. #35 at 38). First, as Defendant accurately concedes, "the Department of Justice's *Petite* Policy confers no rights upon a defendant." (Doc. #35 at 36). Second, the Department of Justice's *Petite* Policy "is an internal policy of self-restraint that should not be enforced against the government." *United States v. Nelligan*, 573 F.2d 251, 255 (5th Cir. 1978) (citations omitted). It would clearly disrupt the separation of powers, which Defendant unavailingly invokes, for this court to supervise and police the Department of Justice's compliance with its internal, self-imposed policy, which does not create enforceable rights.

definitively terminate the prosecution.  In this case, on the other hand, the court granted the Government's motion to dismiss the indictment *without prejudice*.

Consequently, in light of the facts of this case, Defendant's allegation that this court has usurped executive prerogative is wholly unfounded.  More accurately, the court, consistent with the Government's proper request pursuant to 18 U.S.C. § 3551(a),[16] set a date for sentencing.  Only through Olympic-style factual contortion can a conclusion be reached that proceeding to sentencing in this case opens the door to judicial assumption of prosecutorial discretion in other cases.[17]

To summarize, Defendant has not presented any justification that would warrant vacating the Order setting this case for sentencing.  First, the Supreme Court's decision in *Cotton*, the Eleventh Circuit's decisions in *McCoy* and *Sanchez*, and the Fourth Circuit's decision in *Hartwell* indicate that a jurisdictional assessment must be severed from analyzing compliance with the Fifth Amendment or the Federal Rules of Criminal Procedure.[18]  Second, jurisdiction is absent only if the alleged crime is beyond the scope of federal statutory law.  Finally, Defendant's plea to statutorily prohibited acts produced a conviction, which independently warrants federal jurisdiction.  Therefore, pursuant to § 3231, this court has jurisdiction to sentence Defendant on the basis of his convictions.

---

[16] According to 18 U.S.C. § 3551(a), "a defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced . . . ."

[17] Indeed, there is a robust body of caselaw concerning whether and to what extent a district court may deny the Government's Rule 48 motion and order that the case proceed.  *See, e.g.*, *United States v. Cowan*, 524 F.2d 504, 513-15 (5th Cir. 1975).  But because the Government has requested the court to sentence Defendant, those firmly established rules are simply not implicated by this decision.

[18] To be clear, Defendant has not established that either the Fifth Amendment or the Federal Rules of Criminal Procedure require an indictment post-conviction and at sentencing.  *See* discussion *supra* Part II.B.  His suggestion, therefore, that "§ 3231 must be read in the constitutional and procedural context . . . within which it is found" begs the question.  (Doc. #35 at 18).  But even assuming the constitutional or procedural requirement of an indictment at sentencing, this premise demonstrates that jurisdiction nevertheless is proper.

III.    **CONCLUSION**

For the above-stated reasons, the court concludes that Defendant's motion is due to be denied.   A separate order, consistent with this Memorandum Opinion, will be entered contemporaneously herewith.

**DONE** and **ORDERED** this _____14th_____ day of April, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

40